# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Staff Sergeant SCOTT E. MORGAN**
**United States Army, Appellant**

ARMY 20160573

Headquarters, U.S. Army Maneuver Support Center of Excellence
J. Harper Cook, Military Judge
Colonel Charles Kirchmaier, Staff Judge Advocate (pretrial)
Colonel John T. Rothwell (post-trial)

For Appellant: Captain Timothy G. Burroughs, JA (argued); Colonel Mary J. Bradley, JA; Major Julie L. Borchers, JA; Captain Timothy G. Burroughs, JA (on brief); Lieutenant Colonel Christopher D. Carrier, JA; Captain Cody D. Cheek, JA; Captain Timothy G. Burroughs, JA (on reply brief).

For Appellee: Captain Jeremy S. Watford, JA (argued); Colonel Tania M. Martin, JA; Major Cormac M. Smith, JA; Captain Cassandra M. Resposo, JA (on brief).

22 June 2018

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

Appellant, a former drill sergeant, appeals his conviction for violating a general regulation that prohibited him from engaging in a sexual relationship with a trainee, in violation of Article 92, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 892.[1] This case is before us for review pursuant to Article 66, UCMJ. Appellant alleges that the evidence against him is factually insufficient and claims

---

[1] A military judge sitting as a special court-martial sentenced appellant to be reduced to the grade of E-3 and to be separated from the service with a bad-conduct discharge. The military judge acquitted appellant of a second specification under Article 92 for violating the same regulation by having a "personal relationship" with the same trainee. The convening authority approved the adjudged sentence.

that he was prejudiced by an erroneous evidentiary ruling.[2] We address only the latter claim. Finding no prejudicial error, we affirm the findings and sentence.

**BACKGROUND**

Private DE was a trainee in basic training. At trial, Private DE claimed she had performed oral sex on appellant in the cadre bathroom of the Delta Company barracks building.[3] Appellant completely denied any inappropriate conduct. Key to the issue we address on appeal is that Private DE testified that she knew appellant had a vasectomy scar. Appellant had indeed undergone a vasectomy some time ago and had a small scar to show for it. Although not a seriously contested fact, the government even secured and introduced several pictures of appellant's genitalia showing the scar.

Thus, at trial and on appeal, one of the questions before the factfinder is how Private DE, a trainee, would know about appellant's vasectomy and the resulting scar unless her testimony was true.[4] Indeed, that PVT DE "knew too much" was the government's theme of the case.

The defense countered this argument with a theory that PVT DE must have learned about appellant's vasectomy by other means. Specifically, the defense suggested that PVT DE learned of the vasectomy from overhearing appellant's casual conversations with other drill sergeants. Although no witness would testify that PVT DE (or any trainee) had heard such a conversation, appellant offered testimony from several witnesses that appellant had discussed his vasectomy with

---

[2] Taking into account that the trial court had the ability to see and hear the witnesses, we find the evidence legally and factually sufficient.

[3] In his brief, appellant cites to pretrial documents to show that the government elected not to prefer charges alleging a violation of Article 120, UCMJ. Appellant appears to argue that the government's charging decision is evidence that even the government prosecutors did not find PVT DE's claims (which included allegations of force) were credible. Appellant also notes that he turned down non-judicial punishment for the offenses with which he was ultimately charged. He asserts that his demand of a trial by court-martial is consistent with his claim of innocence. We limit our review to the evidence and testimony introduced in the record and assign these considerations no weight.

[4] A second issue at trial was how Private DE could accurately describe the layout and furnishing of the cadre bathroom when, in the words of the company First Sergeant, "I've been at Delta company for quite some time, sir . . . and we've never had a female trainee inside that bathroom."

2

other drill sergeants. The inference the defense team sought was that PVT DE must have heard these conversations. The military judge excluded some of this evidence, and it is these rulings that appellant appeals.

**ANALYSIS**

Appellant alleges that the military judge improperly excluded testimony about vasectomy conversations under an erroneous view of what constitutes hearsay. However, as we explain below, most of the conversations that the defense sought to admit had a tenuous connection to the offense. Private DE was in Delta Company, and the offense occurred in the Delta Company barracks building.

*A. Staff Sergeant Sequiria*

The defense called Staff Sergeant Sequiria to testify about "personal conversations" with appellant that occurred in the "CQ desk" and "cadre lounge" area of the barracks. When the defense asked SSG Sequiria to repeat the content of the conversations the military judge sustained the government's objection. From the context, we accept appellant's inference that the defense attempted to elicit that SSG Sequiria had discussed appellant's vasectomy with him.

However, SSG Sequiria had worked with appellant when he was assigned to a different basic training company, and worked in a different barracks building. No evidence was introduced that could show that PVT DE – or anyone in her basic training unit – could have overheard the conversation. Indeed, it is not even clear that PVT DE was in the Army at the time. When asked why testimony about a conversation that PVT DE could not have overheard was relevant, the defense counsel responded that it tended to show "the commonness of these discussions in an area where the trainees can hear them." The military judge sustained the government's objection on relevance grounds. We find no error.

*B. Staff Sergeant Milligan*

Similarly, Staff Sergeant Milligan worked with appellant at Bravo Company and was called to testify about conversations she had with appellant at Bravo Company. When the military judge questioned the relevance, the defense asserted that if the accused had discussed his vasectomy with other Drill Sergeants in Bravo Company, it made it more likely that he had this conversation with a Drill Sergeant in Delta Company. The defense asserted that it amounted to "a habit to - - - have these conversations."[5]

---

[5] A foundation for habit under Mil. R. Evid. 406 was not established.

The military judge sustained the government's relevance objection.  We find no error.

## C. Staff Sergeant Nay

By contrast, Staff Sergeant Nay worked with appellant in Delta Company.  He testified that the drill sergeants would sometimes congregate in the drill sergeant lounge and engage in "water cooler" conversations.  Staff Sergeant Nay testified that in the drill sergeant lounge you could hear the trainees talking.  The defense argued that it was a reasonable inference that if the drill sergeants could hear the trainees talking, then the trainees could hear the drill sergeants talking.  However, SSG Nay appeared to qualify his testimony by saying that while he could hear them talking, he was hard of hearing, and could only "hear them make noise."[6]

When the defense asked SSG Nay to recount content of the conversations the government objected.  From the context, we again understand that the defense sought to introduce that appellant discussed his vasectomy with SSG Nay for the purpose of showing that this conversation may have been overheard either by PVT DE or, alternatively, a trainee who then told PVT DE.

The government initially objected on hearsay grounds.  The government would later add the objections that the testimony was speculative and not relevant.  The government argued that it is "a big jump [to argue] that 'Sergeant Nay knows, therefore trainee A knows, and Trainee B knows'" about appellant's vasectomy.

The defense counsel explained that this was not hearsay and that she was not offering the conversations for the truth of the matter asserted.  *See* Mil. R. Evid. 801(c)(2).  Rather, the defense explained, the testimony was offered for the "effect on the listener."  The "listener" being the trainees that may have overheard the conversation.

The military judge asked the defense if they were going to introduce evidence "whether or not a trainee heard a conversation, presumably, about a topic you're trying to introduce here?"  The defense explained they were offering evidence that drill sergeants heard trainee conversations, and that "[i]t is likely that the reverse is true. . . ."  The defense did not offer any direct evidence that PVT DE or any other trainee in her training cycle had overheard any conversation between drill sergeants talking in the drill sergeant lounge or a specific conversation about appellant's vasectomy.

---

[6] While we understand SSG Nay's testimony to be that he could hear when trainees were talking, from the context it is unclear whether he (or anyone) could understand the actual words spoken.

The military judge sustained the government's hearsay objection, but caveated by allowing the defense to try again: "If you think you can tie this to some listener. . . ." In context, we understand the military judge's ruling as rejecting the defense claim that the testimony was offered for the effect on the listener, when the defense had not yet established anyone of note had heard the conversation. That is, with no relevant "listener" to overhear the conversation, there could be no effect on the listener.

We agree with appellant that the proffered testimony was not hearsay under Mil. R. Evid. 801. The defense was not trying to elicit the accused's out-of-court statements that he had a vasectomy in order to prove that he had a vasectomy. Indeed, it was the government that wanted to prove that appellant had a vasectomy in order to corroborate PVT DE's testimony. Instead, the defense offered the testimony to prove the conversation about a vasectomy happened, and that it was possibly this conversation that gave PVT DE the personal information about appellant on which she could fabricate a credible claim.

Thus, to the extent that the military judge excluded the proffered testimony as impermissible hearsay, we would disagree. We do not, however, find the military judge abused his discretion, because, in context, it is clear that the military judge was also concerned that the conversations about vasectomies were of only marginal or conditional relevance – the condition being whether or not PVT DE overheard the conversation. To the extent that the military judge excluded the testimony because its probative value was slight or conditional and would cause undue delay or waste time, the military judge would also have been within his discretion in excluding the testimony. *See* Mil R. Evid. 402(b); 403.

### D. Prejudice

Even if the military judge improperly excluded drill sergeant conversations about appellant's vasectomy, any error was harmless. Appellant introduced the same evidence through other sources.

First, the defense offered a stipulation of expected testimony from Staff Sergeant Jones. Staff Sergeant Jones worked with appellant when he was assigned to Bravo Company. The parties agreed that Staff Sergeant Jones learned about appellant's vasectomy from appellant during a conversation they had in the "CQ lounge." Staff Sergeant Jones also would have testified that such conversations could be heard "outside the lounge area." Thus, to the extent that a conversation about appellant's vasectomy that occurred in the Bravo company CQ lounge was relevant to an offense that occurred in the drill sergeant latrine in the Delta Company barracks, that information was placed in front of the factfinder.

5

Second, appellant testified, without objection, that he had discussed his vasectomy with a Sergeant Turner and Staff Sergeant Nay in the "Delta Company CQ." He testified that the conversation took place in "[m]id August 2015." The date of the offense was 23 August 2015.

Finally, PVT DE testified that she already knew that appellant had undergone a vasectomy and had a vasectomy scar prior to the offense. She knew this because appellant told her about it.

> Q. . . . So, he pulls you in the other room, . . . what else did you guys talk about?
> A. He talked about his family.
> Q. What did he tell you about his family?
> A. That he had kids, and he's been divorced.
> Q, Okay.
> A. And he told me about his vasectomy.
> Q. And what did he share about his vasectomy with you?
> A. That he could have sex with whoever he wanted, and if they came back and was like, "Oh, I'm pregnant," that he was like, "No, that's not mine," and that he watched the vasectomy being done, and that he had a -- there was just a scar left over from it.

Accordingly, even assuming that the military judge erroneously excluded evidence that appellant had talked about his vasectomy with other drill sergeants, the exclusion was not prejudicial as the same or similar evidence was admitted through other witnesses.

## CONCLUSION

The findings and sentence as adjudged and approved by the convening authority are AFFIRMED.

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

6